### IN THE UNITED STATES DISTRICT COURT FOR
### THE DISTRICT OF KANAS

| | |
|---|---|
| MICHAEL LIEFFRING, | ) |
| Plaintiff, | ) |
| v. | ) |
| DEPARTMENT STORES NATIONAL BANK, | ) Case No. |
| and | ) |
| EQUIFAX INFORMATION SERVICES, LLC, | ) |
| Defendants. | ) |

### PETITION FOR DAMAGES

COMES NOW the Plaintiff, Michael Lieffring, ("Plaintiff"), for his Petition against Defendants, Department Stores National Bank ("DSNB"), and Equifax Information Services, LLC ("Equifax"), and states as follows:

### PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA") which relates to the proper dissemination and use of consumer credit and other financial information.

## JURISDICTION & VENUE

1. Jurisdiction arises under 15 U.S.C. § 1681 and pursuant to 28 U.S.C. § 1331.

2. Venue in this District is proper in that Plaintiff resides here, the Defendants transact business here, and the conduct complained of occurred here.

## PARTIES

3. Plaintiff is a natural person that resides in Johnson County, Kansas.

4. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

5. The account relevant to this dispute was obtained for personal, family or household purposes and is subject to the provisions of the FCRA.

6. The debt incurred on the account ("the Debt") was incurred within the State of Kansas in the course of acquisition of property or services for personal, family or household use.

7. DSNB is a company that engages in the issuance of credit cards in the State of Kansas.

8. DSNB is a furnisher of information as contemplated by the FCRA § 1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies.

9. Equifax is a foreign limited liability company that regularly transacts business in Kansas.

10. Equifax is a national consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f).

## STATEMENT OF FACTS

11. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

12. On or about August 14, 2007, Plaintiff opened a Macy's credit card account with DSNB.

13. Plaintiff, faced with losing his home during the economic downturn, defaulted on his payments to DSNB on his Macy's credit card account in 2012.

### DSNB's 1099-C to Plaintiff Represented That the Debt was Canceled

14. On or about May 23, 2014, DSNB reported to both Plaintiff and the Internal Revenue Service ("IRS") that an "identifiable event" occurred in relation to the Debt.

15. DSNB reported the "identifiable event" as a category "G" event on an IRS "Form 1099-C, Cancellation of Debt," which communicated that DSNB decided "to discontinue collection activity and cancel the debt." (quoting IRS publication 4681 for use in preparing 2015 forms, p. 3, available at https://www.irs.gov/pub/irs-pdf/p4681.pdf as of October 11, 2016).

16. The IRS and tax court consider a 1099-C by itself is sufficient evidence to "establish that [Plaintiff] received … income." *Balice v. Comm'r,* T.C. Memo 2015-46 at *10.

### Plaintiff Relied on DSNB's Representation to His Detriment

17. Plaintiff reasonably understood DSNB's 1099-C to communicate that DSNB had canceled Plaintiff's debt.

18.     In reasonable, good faith reliance on DSNB's representation and in fear of IRS sanctions and penalties for failure to report income, Plaintiff reported the amount stated on DSNB's 1099-C as income and paid taxes on the same for the 2014 tax year.

19.     Plaintiff was legally obligated to respond, act and make an assertion to the IRS regarding DSNB's 1099-C because the IRS code required Plaintiff to report whether the amount stated on DSNB's 1099-C indicated cancellation of debt.

20.     Plaintiff incurred a change in his tax burden with the addition of the reported accession to income from cancellation of debt.

**Plaintiff Discovers DSNB Did Not Cancel the Debt**

21.     In January of 2014, Plaintiff obtained a copy of his credit reports from the three major CRAs: Equifax, Experian, and TransUnion.

22.     Plaintiff was alarmed to discover that his Equifax credit report showed a balance due on the Debt, which was inconsistent with DSNB's reporting to Plaintiff and the IRS.

23.     Plaintiff, understanding that the debt was cancelled, sent written disputes to Equifax in letters dated April 22, 2015 and May 27, 2015 stating that Plaintiff did not owe a balance on the Debt pursuant to DSNB's 1099-C.

24.     In each letter, Plaintiff attached a copy of his 1099-C from the IRS and included a statement that the debt was cancelled and he no longer owed the debt.

25.     Pursuant to § 1681i of the Fair Credit Reporting Act ("FCRA"), Equifax was obligated to reinvestigate these derogatory accounts for accuracy.

26. Upon information and belief, as part of its investigation of Plaintiff's written dispute, Equifax sent notice of Plaintiff's dispute to DSNB.

27. In response to Plaintiff's disputes, Equifax informed Plaintiff that DSNB had verified the account as reporting correctly.

## FIRST CLAIM FOR RELIEF
**(Negligent and Willful Violations of 15 US.C. § 1681*e*(b) by Equifax)**

28. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

29. A "consumer reporting agency" is defined in 15 U.S.C. § 1681*a*(f) as follows:

> "[A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."

30. Equifax is a consumer reporting agency as defined by Section 1681*a*(f) of the FCRA.

31. Section 1681*n* of the FCRA imposes civil liability on any CRA "who willfully fails to comply with any requirement" of the Act. *See* U.S.C. § 1681*n*(a).

32. Section 1681*o* of the FCRA provides civil liability against any CRA that is negligent in failing to comply with any requirement imposed under the Act.

### Equifax's Failure to Follow Reasonable Procedures

33. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum

possible accuracy of the information concerning the individual about whom the report relates." *See* 15 U.S.C. § 1681*e*(b).

34. Equifax has prepared multiple consumer reports concerning Plaintiff, and disseminated such reports to one or more third party(s), that failed to assure "maximum possible accuracy" of the information pertaining to Plaintiff.

35. The consumer report(s) prepared by Equifax concerning Plaintiff contained inaccurate information in violation of 15 U.S.C. § 1681*c*(a)(3).

36. Equifax willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published concerning Plaintiff in violation of 15 U.S.C. § 1681*e*(b).

37. As a direct and proximate result of Equifax's willful and/or negligent refusal to follow reasonable procedures as mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of credit opportunity, a justifiable fear to request credit, expenditure of time and resources, mental anguish, humiliation, and embarrassment, entitling them to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

38. Equifax's continued refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

**WHEREFORE** Plaintiff prays for judgment on this *First Claim for Relief* in his favor and against Equifax, and for the following relief:

(a)   Actual damages sustained;

(b)   Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c)   Punitive damages in an amount to be determined by the jury;

(d)   Reasonable attorneys' fees and costs; and

(e)   Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## SECOND CLAIM FOR RELIEF
### (Negligent and Willful Violations of 15 US.C. § 1681*i* by Equifax)

39.   Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

40.   The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681*i*(a)(1).  The Act imposes a 30-day time limitation for the completing of such an investigation.  *Id.*

41.   The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681*i*(a)(5)(A).

### Equifax's Reasonable Reinvestigation Violations

42.   By letter dated April 22, 2015, Plaintiff disputed the derogatory payment and balance history appearing on his credit report concerning the account.

7

43. Upon information and belief of Plaintiff, Equifax conducted an inadequate investigation of the Account, and Plaintiff received a notice that his account was "updated" despite the derogatory and inaccurate information remaining on his credit report.

44. By letter dated May 27, 2015, Plaintiff again disputed the derogatory payment history and balance information appearing on his credit report.

45. Equifax conducted once again informed Plaintiff that this account was "updated", yet failed to even include a mandatory notation that the "Account was Disputed by Consumer" in the Comments section of Plaintiff's "updated" credit report.

46. This continued to harm Plaintiff's ability to obtain financing to which he was otherwise qualified to receive.

47. Once again, Equifax conducted such a shoddy investigation into the Account that the inaccurate information remained, despite having received supporting documentation that the account had been cancelled in both disputes.

48. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Equifax willfully and/or negligently violated 15 U.S.C. § 1681$i$(a)(1).

49. As a direct and proximate result of Equifax's disregard for Plaintiff's dispute and its obligations under the FCRA as outlined above, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer such as himself.

50. As a direct and proximate result of Equifax's willful and/or negligent refusal to conduct reasonable investigations as mandated by the FCRA as outlined above,

Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of credit opportunity, a justifiable fear to request credit, expenditure of time and resources, mental anguish, humiliation and embarrassment, entitling them to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

51.  Equifax's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

**WHEREFORE** Plaintiff prays for judgment on this *Second Claim for Relief* in his favor and against Equifax, and for the following relief:

(a) Actual damages sustained;

(b) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c) Punitive damages in an amount to be determined by the jury;

(d) Reasonable attorneys' fees and costs; and

(e) Any other and/or further relief as deemed appropriate and just by this Honorable Court.

**THIRD CLAIM FOR RELIEF**
**(Negligent and Willful Violations of 15 U.S.C. § 1681*s-2* Against DSNB)**

52. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

53. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

54. DSNB is a "furnisher" as that term is used in 15 U.S.C. § 1681*s-2*.

55. Furnishers of credit information have duties under the FCRA, specifically 15 U.S.C. § 1681*s-2*(b)(1), to investigate disputes initiated from consumers to CRAs as to the accuracy of information reported about them by the furnisher.

56. On at least two (2) occasions, namely April 22, 2015 and May 27, 2015, and, Plaintiff contacted Equifax specifically to dispute the accuracy of the derogatory DSNB accounts being reported about him.

57. Plaintiff specifically advised Equifax on each occasion that a mistake had been made, and requested the false information be corrected accordingly.

58. Upon information and belief, and pursuant to 15 U.S.C. § 1681*i*(a)(2), DSNB received notification of these disputes from Equifax and sent notice to Equifax verifying the information as accurate.

59. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, DSNB negligently and/or willfully violated § 1681*s-2*(b)(1) with respect to each dispute lodged by Plaintiff.

60. Furthermore, DSNB's "update" of the account information directly caused Plaintiff to be unable to obtain financing.

61. As a direct and proximate result of DSNB's willful and/or negligent refusal to comply with the FCRA as described herein, Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of creditworthiness, loss of credit opportunity, damage to reputation, expenditure of significant time, energy and out-of-pocket costs, considerable distress, mental anguish, worry, frustration, fear and embarrassment, entitling Plaintiff to an award of actual damages as determined by the jury, plus attorneys' fees and the costs of this action, pursuant to 15 U.S.C. § 1681*o*.

62. DSNB's complete and utter indifference as to its obligations under the FCRA reveals a conscious disregard of the rights of Plaintiff, and the injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, calling for an assessment of punitive damages against DSNB, pursuant to 15 U.S.C. § 1681*n*(a)(2).

**WHEREFORE** Plaintiff prays for judgment on this ***Third Claim for Relief*** in his favor and against DSNB, and for the following relief:

(a) Actual damages sustained;
(b) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;
(c) Punitive damages in an amount to be determined by the jury;
(d) Reasonable attorneys' fees and costs; and
(e) Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## JURY DEMAND

63. Plaintiff respectfully demands a jury trial on all issues so triable.

Respectfully submitted,

Dated: January 30, 2017            **Credit Law Center, LLC**

*By: /s/ Creighton P. Mayo*
Creighton P. Mayo #65470
255 NW Blue Parkway, Suite 200A
Lee's Summit, MO 64063
Tele:   (816) 246-7800
Fax:    (855) 523-5905
creightonm@creditlawcenter.com

**Attorney for Plaintiff**